NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

In the Interest of A.W.J., a child.    )
                                       )
————————————————————————    )
                                       )
N.J.,                                  )
                                       )
            Appellant,                 )
                                       )
v.                                     )    Case No. 2D13-4877
                                       )
DEPARTMENT OF CHILDREN AND    )
FAMILIES, and GUARDIAN AD    )
LITEM PROGRAM,                         )
                                       )
            Appellees.                 )
————————————————————————    )

Opinion filed August 1, 2014.

Appeal from the Circuit Court for Pasco
County; Thomas M. Ramsberger, Judge.

Timothy M. Beasley, The Beasley Law
Firm, P.L., Pinellas Park, for Appellant.

Bernie McCabe, State Attorney, and Leslie
M. Layne, Assistant State Attorney,
Clearwater, for Appellee Department of
Children and Families.

Laura E. Lawson, Statewide Guardian ad
Litem, Sanford, for Appellee Guardian ad
Litem Program.


SLEET, Judge.

N.J., the father, appeals an order finding that the State proved by a preponderance of the evidence that he abused his son, A.W.J., and adjudicating A.W.J. dependent. He argues on appeal that the trial court erred in adjudicating A.W.J. dependent because the State failed to meet its evidentiary burden. We agree and reverse.

According to the father's testimony, he placed six-month-old A.W.J. in a Bumbo chair on the floor and went to the kitchen to retrieve a bottle. While the father was in the kitchen, A.W.J. pushed the chair over backwards and hit his head on the exposed concrete floor. The father contacted the mother, who came home from work with the car seat base, and the couple drove A.W.J. to Trinity Medical Center. Trinity doctors determined that A.W.J. sustained a skull fracture extending across his occipital and parietal bones. A.W.J. received further treatment for his injuries at All Children's Hospital. A.W.J. has since made a full recovery; he suffered no permanent damage as a result of the accident.

At the evidentiary hearing, Detective Grady, who conducted the routine investigation for Pasco County major crimes division, testified that he was not suspicious of the parents' version of events and that as part of his investigation he independently confirmed online that the Bumbo chair can be unreasonably unstable. Similarly, Detective Gulati, who initially interviewed the parents at the hospital, testified that the parents' story was consistent with his observations at their home.

Doctor Charlene Weber, A.W.J.'s pediatrician, testified that she reviewed the reports generated at both Trinity and All Children's hospitals. She explained that the report of each physician who examined A.W.J. at the Trinity emergency room made reference to a palpable bruise on the back of his head. She testified that at six months, A.W.J. was large for his age, that he had a larger-than-average head circumference and weight, and that his motor skills were a little developmentally delayed. She was certain that based on A.W.J.'s development and physical characteristics, it was "possible and

plausible" that he was injured in the manner described by the parents. She testified that she did not see any inconsistencies in the parents' accounts of the accident and that the medical reports from both hospitals supported their version of events.

Doctor Sally Smith was the only witness at the hearing who testified that A.W.J.'s head injury was the result of abuse. The record reflects that she was not asked to by the Department and she did not provide her opinion within a reasonable degree of medical probability. She based her conclusion of child abuse primarily on her assessment of the parents' credibility, not on the available medical reports. Dr. Smith testified that her opinion was based on "significant inconsistencies" in the parents' accounts of the accident. However, the only inconsistencies she testified to were the father's ability to see the accident and the presence of a bump on the back of the child's head. Dr. Smith concluded that the father's account of the accident was inconsistent because the father told Trinity physicians that he saw the accident occur, but told Dr. Smith that he was in the kitchen. However, the father testified that he could see A.W.J. in the living room from the kitchen; this layout and the ability to see from one room to another was confirmed by the officer who visited the family home.

Dr. Smith also concluded that the parents were not credible because the father misrepresented the presence of a large bump on the back of A.W.J.'s head. Dr. Smith explained that she read the E.R. doctors' notes and that no bump was reported when A.W.J. first arrived at Trinity Medical Center and that she did not observe a bump on the child's head when she examined him a few days after the accident. However, she conceded on cross examination that A.W.J.'s CAT scan showed some slight swelling and that her own medical report reflected that the Trinity triage nurse observed a bump on the back of A.W.J.'s head. Thus, Dr. Smith's trial testimony was inconsistent with her own medical reports regarding the presence of a bump on A.W.J.'s head.

The "trial court may adjudicate a child dependent if the Department proves by a preponderance of the evidence that the child has been abused or neglected or is at

substantial risk of imminent abuse or neglect." C.M. v. Dep't of Children and Family Servs., 997 So. 2d 513, 514-15 (Fla. 2d DCA 2008); see also §§ 39.01(15)(a),(f), .507(1)(b), Fla. Stat. (2013)). We give great deference to the trial court's findings of fact and its superior opportunity to judge the credibility of witnesses. We review the final order of dependency for competent substantial evidence. C.M., 997 So. 2d at 515. "Competent substantial evidence is tantamount to legally sufficient evidence." S.T. v. Dep't of Children and Family Servs., 87 So. 3d 827, 833 (Fla. 2d DCA 2012) (quoting R.F. v. Fla. Dep't of Children and Families, 770 So. 2d 1189, 1192 (Fla. 2000)). If there is not competent substantial evidence in the record, "the error rises to an abuse of discretion." S.T., 87 So. 3d at 833.

It was the Department's burden to prove by a preponderance of the evidence that A.W.J. was abused or neglected or is at substantial risk of imminent abuse or neglect. See id. at 834; see also § 39.01(15)(a),(f). The trial court's finding of abuse was based entirely on the testimony of Dr. Smith, the only witness who testified that the injury could only be the result of physical abuse. Hence, Dr. Smith's testimony must be examined to determine whether it meets the competent substantial evidence standard while giving due deference to the trial court on factual and credibility issues.

There was no evidence of prior abuse and it was undisputed that the father immediately called the mother after the incident so that they could transport A.W.J. to the emergency room.[1] All witnesses, except Dr. Smith, agreed that A.W.J.'s injury was consistent with the parents' version of events. It was the Department's burden to produce competent substantial evidence to prove A.W.J. was injured by abuse rather than an accident involving a potentially defective baby chair. To do that, the Department was required to offer an expert opinion within a reasonable degree of medical probability that the injury was the result of abuse. Dr. Smith did not offer any

---

[1]The trial court made no finding of neglect.

- 4 -

opinion within a reasonable degree of medical probability as to the mechanism of injury nor did the Department posit any theory based on the evidence adduced at trial to demonstrate the injury was caused by abuse.  Dr. Smith's opinion of abuse was not substantiated by record evidence; her subjective opinion of abuse and disbelief of the parents' version of events does not meet the competent substantial evidence standard.  Dr. Smith's testimony alone was not legally sufficient to support the trial court's adjudication of dependency.  See S.D. v. Dep't of Children & Family Servs., 42 So. 3d 938, 939-40 (Fla. 2d DCA 2010) (reversing an order adjudicating a child dependent when the only evidence of violence was the opinion of the child protective investigator).

Reversed.

KHOUZAM and MORRIS, JJ., Concur.